Barstow agt. Thorne.

---

DAVID F. BARSTOW agt. JULIUS C. THORNE and ISAAC H. STORM.

Where an under sheriff levied upon and sold defendants' personal property upon a *junior* judgment execution and *levy*, and paid over the money collected upon the execution to plaintiff's attorney, disregarding a prior judgment execution and *levy* by a deputy sheriff, as intended to hinder and delay other creditors; it was *held* on motion by plaintiff in the oldest judgment and levy, to compel the sheriff to pay over the amount he had collected on the oldest execution; that the plaintiff had his remedy against the sheriff if he had been injured; and the motion was denied with costs.

*February Term,* 1846.

MOTION by plaintiff that the sheriff of Oneida return the execution in this cause, and pay over to the plaintiff's attorney the whole amount of money made from the sale of defendants' property.

An execution was issued in this cause and put into the hands of Lent, deputy of the sheriff of Oneida, on the 31st of December, 1844, for $1,181.05 and interest from 10th February, 1844. On the 18th of February, 1845, the deputy Lent took an inventory of the personal property of the defendants, on which he levied, consisting of dry goods, crockery, hardware, &c., being the remnant of a store of goods. Lent took a receipt from a responsible freeholder for the delivery of the property. Lent advertised the property for sale on the 28th of [*65] February, to be sold on the 6th *March, at 10 o'clock, A.M., at the store of defendants. Plaintiff's attorney consented to an adjournment of the sale to the 17th of March, for the reason that the defendants alleged that they expected a man from Pennsylvania within a short time, to let them have funds to pay off the judgment. On the 17th of March defendants again desired a postponement, as the individual from

Barstow agt. Thorne.

Pennsylvania had not arrived; it was stated by them that a letter had been received from him, that he expected to be there in a short time. Plaintiff's attorney consented that the sale might be postponed to the 7th of April; defendants stated that if the individual did not arrive within a week, one of them would go there in order to obtain the money. The deputy Lent stated that the amount of goods levied upon was not near sufficient to satisfy the execution. About the 1st of April, John S. Ray, under sheriff of Oneida, informed Lent, that he (Ray) had levied upon the same goods which Lent had previously levied upon, and had advertised to sell on the 5th of April. Lent informed Ray he had previously levied, and was to sell on the 7th of April. On the 5th of April Ray sold the goods levied upon by Lent, Lent being present and forbidding the sale. It was alleged in plaintiff's papers, that the sale of the property was postponed, solely for the reasons stated, with an expectation that defendants would realize the money and pay the judgment, without a sale of their property, and was not done to hinder or delay creditors.

It appeared from the papers in opposition to the motion, that on the 5th of February, 1845, an execution was issued out of this court on a judgment rendered on the 4th January, in favor of Isaac T. Storm, Charles Storm and Isaac I. Cooper, plaintiffs, against the defendants in this cause, for the sum of $241.45, and delivered to Ray, under sheriff of Oneida, who in March levied on all the property of defendants he could find, including the remnant of a store of goods. On the 5th of April following, he sold the property and received on such sale $112.47, besides expenses, which amount he paid over to plaintiff's attorney in the execution received by him; the amount was endorsed on the execution and the execution was returned and filed. Ray denied that Johnson, plaintiff's attorney in this cause, ever requested him to pay over the money he had received upon the execution in this cause, before he had paid it over as stated.

Ray also stated, that the defendants, from the winter of 1844 up to the time of the sale, were engaged in the mer-

cantile business, at Annsville, in the county of Onei-
[*66] da, and during the spring, summer and fall of *1844
they had a large amount of goods, and during all
that time he was informed and believed defendants had
no other property liable to execution, except such as was
in and about their store; also that during all of the year
1844, and up to the time he levied on the goods of de-
fendants, they were engaged in carrying on their store
and disposing of their goods and property like other mer-
chants, as sole and exclusive owners thereof, without any
apparent hindrance or molestation whatever; that, during
the summer and fall of 1844, he had other executions
against the defendants, that when he went to collect them, he
was always met by an execution issued in this case by B. P.
Johnson, attorney, and the claim that such execution was the
first lien on the property of the defendants, and that it was
large enough to consume all their property.

Ray further stated that it appeared from the law register of
B. P. Johnson, Esq., that on the 18th March, 1844, an execu-
tion was issued in this cause and delivered to M. L. Kenyon,
a deputy sheriff, and that again in the month of August,
another execution was issued and delivered to Kenyon, the
first one having been returned as stated in the register. Ray
stated that when he received the execution as stated by him
the defendants had disposed of nearly all of their property,
and it was still claimed by defendants that Ray could not
take the property, because it was subject to an execution in
this cause; still he thought executions in this cause had been
used long enough to keep off other creditors, and he went on
and levied and sold.

Ray also stated that after he had levied, Lent, the deputy
sheriff, showed him the execution in this cause (issued by
Johnson on the 31st Dec., 1845), in presence of O. B. Matte-
son, and upon inspection of it, it plainly appeared that the
teste of the execution had been altered, by striking out the
words " Academy in Utica, the first Monday in July," and
inserting in their stead the words " 2nd Monday in October,

at the Court House in the city of Rochester," and that Lent informed him and Matteson, that after he (Ray) had levied upon defendants' property, Johnson called on Lent and took the execution and altered it in teste thereof as stated; and that Lent informed them he would swear to the fact if necessary. Lent had since left this part of the country, and his affidavit could not be procured. Ray also stated that he had seen Johnson's law register, in which this cause was entered, that from the entries therein, it appeared that the execution which was delivered to Lent had been altered. Ray also stated that he had made search, and the execution in this cause could not be found returned. The facts stated by Ray were substantially corroborated by other affidavits.

*JAMES EDWARDS, *plaintiff's counsel.*                 [*67]
B. P. JOHNSON, *plaintiff's attorney.*
C. H. DOOLITTLE, *counsel apposed.*
MATTESON & DOOLITTLE, *attorneys opposed.*

BRONSON, Chief Justice. On looking into the papers, I am confirmed in what was said on the argument. The sheriff has paid over the money on the junior execution, and the plaintiff, Barstow, if he has been injured, has a complete remedy by action; he can sue for the money, or rule the sheriff to return his execution, and then sue for a false return.

Motion denied, with $7 costs.